UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TEXAS PREMIER HEALTHCARE, LLC, et al., | )<br>)<br>) |
| Plaintiffs | )<br>) |
| vs. | )<br>) |
| DJR CONSULTING SERVICES, LLC, et al., | )<br>)<br>) |
| Defendants. | )<br>)<br>) |

Case No. 4:18-cv-02065-JAR

## **MEMORANDUM AND ORDER**

This matter is before the Court on two motions filed by Defendants DJR Consulting Services, LLC ("DJR"), and Dennis J. Rodden: a Motion to Separate (Doc. 14); and a Motion to Sever or Dismiss (Doc. 16). Plaintiffs Texas Premier Healthcare, LLC ("Texas Premier") and Thrive Wellness Center, P.C. ("Thrive") oppose both motions.

### Background

Plaintiffs make the following allegations in their Complaint (Doc. 1): Texas Premier is a chiropractic practice in Cedar Park, Texas, whose sole member is Kyle Meers, D.C. Thrive is a chiropractic practice in Rochester, Minnesota, whose sole shareholder is Nicholas J. Pratt, D.C. Meers and Pratt separately became aware of DJR in June 2016. Both doctors spoke to Rodden, DJR's sole member and owner.

Rodden told Meers that Texas Premier would benefit from DJR's "FastTrack" service—a suite of products designed to significantly increase income in three to four months by transforming his clinic into a multi-specialty group practice. The package included, among other things,

assistance in recruiting medical doctors, physical therapists, and occupational therapists; access to experienced healthcare attorneys, accountants, and tax advisors; and "unlimited access" to "senior coaches who specialize in office management, personnel, insurance, coding, billing, credentialing, compliance, marketing and practice growth and development." Rodden also represented that DJR would guarantee Texas Premier's success and would educate Meers on relevant laws and regulations. Rodden boasted that DJR's clients had a "100% pass rate" for Medicare certification.

Rodden told Pratt many of the same things. In addition, he assured Pratt that DJR could help Thrive get certified as an Outpatient Rehabilitation Facility, the highest certification recognized by Medicare, typically reserved solely for large hospitals and clinics. As a result, Rodden said, Thrive would be practically "audit proof." As he did with Meers, Rodden bragged about DJR's "proven success record" and deep pool of professional-development and subject-matter experts. Rodden even told Pratt that DJR could assist Thrive in purchasing stem cell samples and could remedy Thrive's ongoing stem cell therapy practices, which Rodden told Pratt were likely illegal.

After speaking to Rodden, both Meers and Pratt decided to purchase DJR's services. The price was $54,750.00. Both chiropractors told Rodden that they would need to secure a loan to cover the costs. Rodden directed both to John Hyde, a loan broker whom Rodden knew. Rodden conceded that Hyde might offer higher interest rates than the doctors could get from other lenders, but assured them that their loans would be approved quickly and that, with DJR's help, their revenues would increase so quickly that the difference would be minimal. Through Hyde, Meers borrowed $30,000 at 18% interest and financed the remainder of the cost with personal credit cards. Hyde brokered a $78,125 loan for Pratt with an 8.49% interest rate.

Meers and Pratt signed a New Client Information Application & Agreement (the "Agreement"). (*See* Doc. 1-1.) The Agreement represented that FastTrack users could earn "an additional $25,000 per month in revenue within 12 months & many clients see $10,000 per month increases within 90 days." (*Id.* at 1.) The Agreement described DJR Consulting as "a *personalized intensive coaching service*" designed to quickly and substantially expand a solo practice. (*Id.* at 3.) The Agreement further listed dozens of specialty programs "represent[ing] only a sampling of more than 75 programs available." (*Id.* at 4.) The Agreement states that, within three days of joining DJR, a New Client Coordinator will contact the client to initiate a "practice-makeover" while "several DJR senior coaches will be working together & behind the scenes for you." (*Id.*) Clients are promised "one-on-one developmental time with [DJR] staff." (*Id.*) Within the first three months, clients are told, senior DJR staff will be in close contact to assist in the transformation and expansion of the practice. (*Id.*)

Both Meers and Pratt allege that DJR did not deliver on the majority of its promises and utterly failed to transform their businesses in any meaningful way. Rather than being available around the clock with personalized advice and coaching, Meers asserts that DJR's "senior coaches and staff" spent a combined six hours on the phone in the nine months following his purchase. (Doc. 1 at ¶ 24.) The customized manuals and guides that DJR promised came late, or not at all, and those that were delivered often had other clients' businesses' names in them, suggesting that they were cut-and-paste form documents. (*Id.*) Whenever Meers called to complain, DJR representatives tried to upsell him to the higher rung of services. (*Id.*)

Pratt alleges that DJR was similarly disappointing for him; Thrive never obtained Outpatient Rehabilitation Facility certification and the billing and accounting firm to which he was referred by DJR made numerous errors that led to Thrive being audited by the Mayo Clinic. (*Id.*

at ¶¶ 36-37.) DJR then refused to assist Thrive in responding to the audit. (*Id.* at ¶ 37.) As was the case with Meers, any time Pratt called for help, DJR tried to upsell him on additional products or services. (*Id.* at ¶ 38.)

Ultimately, both chiropractors gave up and asked for a refund. Pratt called on February 2, 2017, and demanded his money back. DJR refused. Meers went nearly a year before, on April 7, 2017, calling to cancel his membership. Once again, DJR refused to refund the purchase price. Out a combined $109,490, Plaintiffs filed suit in the Circuit Court of St. Charles County, Missouri. Defendants moved to separate the cases, arguing that Plaintiffs' cases were too dissimilar to try together without prejudicing Defendants. The state court agreed and separated the cases. Plaintiffs then voluntarily dismissed the case and filed this suit in Federal Court.

Defendants now move to separate the cases and dismiss them for lack of subject-matter jurisdiction because neither case independently meets the jurisdictional threshold for the amount in controversy. (Docs. 14, 16.) Plaintiffs argue that the cases arise out of the same series of transactions or occurrences and that their losses may be stacked to meet the jurisdictional amount. (Docs. 15, 18.)

**Legal Standard**

Joinder is governed by Federal Rules of Civil Procedure 19 and 20. Rule 20 relates to permissive joinders like this case:

> Persons may join in one action as plaintiffs if . . . they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and . . . any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a)(1). "Although the same transaction or occurrence requirement of Rule 20(a) may be construed liberally, this does not mean joinder is proper in the absence of a transactional

link." *Smith v. St. Charles Cty.*, No. 4:18-CV-171 JCH, 2020 WL 134535, at *2 (E.D. Mo. Jan. 13, 2020) (quoting *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1331 (8th Cir. 1974)).

Meanwhile, "[f]ederal courts are courts of limited jurisdiction. The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Godfrey v. Pulitzer Pub. Co.*, 161 F.3d 1137, 1141 (8th Cir. 1998) (internal citations and quotation marks omitted). In ruling on a motion to dismiss, the Court "must accept all factual allegations in the pleadings as true and view them in the light most favorable to the nonmoving party." *Great Rivers Habitat All. v. Fed. Emergency Mgmt. Agency*, 615 F.3d 985, 988 (8th Cir. 2010) (quoting *Hastings v. Wilson*, 516 F.3d 1055, 1058 (8th Cir. 2008)). "Generally, a complaint that alleges the jurisdictional amount in good faith will suffice to confer jurisdiction, but the complaint will be dismissed if it appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." *OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 348 (8th Cir. 2007) (alteration in original) (quoting *Larkin v. Brown*, 41 F.3d 387, 388 (8th Cir. 1994)). Plaintiffs may combine their individual losses, including punitive damages, to meet the jurisdictional threshold. *See Miller v. Nissan N. Am., Inc.*, No. 4:18CV00340RLW, 2018 WL 4211370, at *3 n.3 (E.D. Mo. Sept. 4, 2018).

## Discussion

The Court is not convinced by Defendants' law-of-the-case argument. "The law of the case is a doctrine that provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Morris v. Am. Nat. Can Corp.*, 988 F.2d 50, 52 (8th Cir. 1993) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). It "prevents the relitigation of settled issues in an action, thus protecting the expectations of the parties, ensuring uniformity of decisions and promoting judicial efficiency."

*UniGroup, Inc. v. Winokur*, 45 F.3d 1208, 1211 (8th Cir. 1995) (citing *Morris v. Am. Nat. Can Corp.*, 988 F.2d 50, 52 (8th Cir. 1993)).

As an initial matter, this is a new case. Although the parties and claims are identical to those in the state-court case, Plaintiffs dismissed and refiled, as is their right. As such, the law-of-the-case doctrine does not bind this court based on the rulings made in state court. *Reed v. Malone's Mech., Inc.*, 765 F.3d 900, 905 n.3 (8th Cir. 2014). Moreover, the rule-of-the-case doctrine "does not apply to interlocutory orders," which may of course be revisited at any time before final judgment. *First Union Nat. Bank v. Pictet Overseas Tr. Corp.*, 477 F.3d 616, 620 (8th Cir. 2007). In any event, the doctrine is discretionary and designed to promote judicial efficiency. *Id.*; *UniGroup*, 45 F.3d 1211. The decision of the state court is informative but not determinative.

That said, after reviewing the factual allegations in the complaint, the Court concludes that separation is appropriate in this case. Plaintiffs allege common questions of law—their claims against Defendants are identical—but Defendants argue that Plaintiffs' claims do not "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(1).

While it is true that Plaintiffs purchased the same product from the same seller based on strikingly similar sales pitches, and that both borrowed money through a broker recommended by Defendants to finance the payment of the same purchase price, their interactions with Defendants were independent and unrelated. Nothing in Plaintiffs' complaint leads the Court to believe that their experiences were linked in any way other than that they both contracted with DJR. While there are certainly similarities in the representations made by DJR to the Plaintiffs there are also differences. The experiences of the Plaintiffs with DJR as set out in the petition are also

substantially different. The Court finds that there is too tenuous a bond to allow Plaintiffs' claims to proceed together and will therefore separate them.

Further, because neither Plaintiff can reach the $75,000 jurisdictional threshold on their own, the Court will dismiss the case for lack of subject-matter jurisdiction.

## Conclusion

The Court concludes that Plaintiffs' claims do not arise from the same series of transactions or occurrences. As such, the Court will grant Defendants' requests to separate the claims. Further, because the value of Plaintiffs' individual claims do not meet the jurisdictional amount requirement, the Court will dismiss the case.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Separate (Doc. 14), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' and a Motion to Sever or Dismiss (Doc. 16), is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Complaint is **DISMISSED.**

Dated this 27th day of March, 2020.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE